THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MICHAEL MÉNDEZ-RODRÍGUEZ

*Plaintiff*,

v.

FRANCISCO GONZÁLEZ-CRUZ

*Defendant.*

Case No. 25-cv-1000 (MAJ)

**OPINION AND ORDER**

**I.   Introduction**

Plaintiff Michael Méndez-Rodríguez ("Plaintiff") brings the present suit against Officer Francisco González-Cruz ("Defendant"), alleging excessive force by a police officer under the Fourth Amendment. (**ECF No. 1 at 3**).

Defendant was served with process on February 28, 2025. (**ECF No. 4**). Proof of service was filed on March 5, 2025. *Id*. Defendant failed to answer the complaint or otherwise plead. Consequently, default was entered against Defendant on March 31, 2025 by the Clerk of Court. (**ECF No. 7**). At Plaintiff's request, the Court scheduled an evidentiary hearing to assess damages. (**ECF No. 10**). The hearing was held on August 12, 2025. (**ECF No. 13**). Plaintiff testified at the hearing and presented six exhibits. (**ECF No. 13**).[1] For the reasons explained below, the Court **GRANTS** Default Judgment for Plaintiff, and enters judgment in the amount of $81,840.92.

---

[1]  Plaintiff's Exhibit 1 presented the diagnosis, discharge instructions, and medical records received by Plaintiff from Hospital University Puerto Rico. Plaintiff's Exhibit 2 presented the diagnosis, discharge instructions, and medical records received by Plaintiff from Administración de Servicios Médicos de Puerto Rico. Plaintiff's Exhibit 3 presented Plaintiff's Puerto Rico Departmento de Hacienda tax withholding

## II. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure allows a district court to enter default "when, as here, a party against whom a judgment is sought has failed to plead or otherwise defend." *Rodríguez-Rodríguez v. BCBG Max Azria Group, LLC*, 18-cv-1075, 2021 WL 10364588 at *5 (D.P.R. Sep. 23, 2021) (reversed on separate grounds); FED. R. CIV. P. 55(a). Because Defendant failed to answer or even appear in this case, default was entered against him by the Clerk. (**ECF No. No. 7**). As a result, all of the well-plead factual allegations contained in the Complaint "are deemed admitted as true." *Rodríguez-Rodríguez*, 2021 WL 10364588 at *5 (citing FED. R. CIV. P. 8(b)(6)); *see also, e.g., Díaz v. Dep't of Educ.*, 09-cv-1564, 2013 WL 2389822, at *2 (D.P.R. May 17, 2013) ("The default of a defendant constitutes an admission of all facts well-pleaded in the complaint.").

Following the entry of default, a district court may enter a default judgment. FED. R. CIV. P. 55(b)(2). When the extent of damages is in dispute or is not readily ascertainable from the pleadings, the district court may require an evidentiary hearing to ascertain the amount of damages. FED. R. CIV. P. 55(b)(2)(B); *Ortiz- González v. Fonovisa*, 277 F.3d 59, 64 (1st Cir. 2002).

## III. Findings of Fact

The Court makes the following findings of fact based on the allegations in the Complaint, which have been deemed admitted, and the evidence presented at the hearing, which stands uncontested.

---

statement for the year of 2023. Plaintiff's Exhibit 4 presented Plaintiff's Puerto Rico Departamento de Hacienda tax withholding statement for the year of 2024. Plaintiff's Exhibit 5 presented a written Miranda Warning signed by Plaintiff on January 5, 2024. Plaintiff's Exhibit 6 presented photographs of Plaintiff's physical injuries sustained as a result of the incident on January 5, 2024.

1. Plaintiff is a waiter at the San Juan Hotel and a resident of Canóvanas. (**ECF No. 16 at 5:22–6:7**).

2. Defendant is a police officer with the Puerto Rico Police Department. (**ECF No. 1 at 2 ¶ 2.2**).

3. On the morning of January 5, 2024, Plaintiff was driving his motorcycle at a speed of around 50 or 55 miles per hour on Route 66 in Carolina, Puerto Rico, when he was struck by a police car driven by Defendant. (**ECF No. 1 at 2, ¶¶ 3.1–3.2**); (**ECF No. 16 at 7:6–18**).

4. After the first impact, Plaintiff attempted to stabilize his motorcycle and drive towards the nearest exit. (**ECF No. 16 at 9:12–10:14**). Defendant then hit Plaintiff with his car two more times. (**ECF No. 1 at 2 ¶¶ 3.2–3.5**).

5. When Plaintiff attempted to communicate with Defendant and tell him to refrain from hitting him, Defendant responded "You are going to see how I stop you now." (**ECF No. 16 at 27:8–14**).

6. Defendant struck Plaintiff with his vehicle a total of three times. (**ECF No. 1 at 2 ¶¶ 3.4–3.5**); (**ECF No. 16 at 10:2–6**).

7. On the third collision, Plaintiff lost control of his motorcycle and crashed. (**ECF No. 1 at 2 ¶ 3.5**).

8. Defendant used foul language toward Plaintiff. (**ECF No. 16 at 27:8–28:1**).

9. After the final collision, Defendant told Plaintiff to say into Defendant's body camera that Plaintiff was at fault for the collision. (**ECF No. 16 at 11:21–12:4**).

10. Plaintiff was never arrested. (**ECF No. 16 at 36:21–25**). An ambulance transported Plaintiff to Trilla Hospital in Carolina, where he underwent testing and treatment for his injuries. Plaintiff was discharged from the hospital that night. (**ECF No. 16 at 13:22–17:14**).

11. Two days later, after experiencing uncontrolled pain, Plaintiff checked himself into another hospital for additional treatment. (**ECF No. 16 at 17:19–19:12**).

12. Plaintiff suffered severe physical injuries which prevented him from working for several months. (**ECF No. 1 at 2–3 ¶¶ 3.8, 3.10**); (**ECF No. 16 at 26:11–16**). Plaintiff's injuries included a "displaced fracture of shaft of left clavicle; Barton's fracture of right radius, initial encounter for closed fracture; Laceration without foreign body, right knee, initial encounter; Contusion of left lesser toe(s) with damage to nail, initial encounter -chip fracture; Burn of unspecified body region, unspecified degree - road rash multiple areas." (**ECF No. 1 at 2–3 ¶ 3.8**).

13. Plaintiff completed approximately four or five sessions of physical therapy to rehabilitate his injuries. (**ECF No. 16 at 30:13–16**).

14. In 2023, Plaintiff's income was $69,609.46. (**ECF No. 16 at 24:21–25:16**).

15. In 2024, Plaintiff's income was $55,968.54. (**ECF No. 16 at 25:24–26:10**).

## IV. Analysis

### a. The Fourth Amendment

"Claims of excessive force 'in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen' are generally analyzed as Fourth Amendment seizures of the person." *Rivera-García v. Román-Carrero*, 938 F. Supp. 2d 189, 196 (D.P.R. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)). A police officer's use of force violates the Fourth Amendment if his actions were not "'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Id.* (quoting *Graham*, 490 U.S. at 397). Under 42 U.S.C. § 1983, any person who deprives another of a federally protected right "under color of" state law may be held personally liable for damages. *Id.* A plaintiff may bring a constitutional claim against a police officer for excessive force under Section 1983 by establishing that his "constitutional injury resulted from the direct acts or omissions of the official[.]" *Id.* at 197 (quoting *Rodríguez-García v. Miranda-Marín*, 610 F.3d 756, 768 (1st Cir. 2010)).

"A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014). "[D]etermining the objective reasonableness of a particular seizure under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

countervailing governmental interests at stake." *Id*. (internal quotations and citations omitted).

Based on the facts before the Court, Defendant had no "governmental interest" in conducting a seizure of Plaintiff. "The automobile exception to the Fourth Amendment's warrant requirement permits officers to seize and search an automobile prior to obtaining a warrant where they have probable cause to believe that the automobile contains contraband." *United States v. Cruz-Rivera*, 14 F.4th 32, 43 (1st Cir. 2021) (citations and quotations omitted). In addition, the "decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id*. "[S]uch a stop can be extended where there is reasonable suspicion of further criminal wrongdoing." *Id*. In this case, however, Defendant had no probable cause or reasonable suspicion to believe that Plaintiff had violated the law: based on the uncontested facts in the Complaint, Plaintiff was a law-abiding motorist driving on a public road at the time that he was seized. Nothing in the facts before the Court would have given Defendant sufficient cause to conduct a stop.

On the other hand, "nature and quality of the intrusion on [Plaintiff's] Fourth Amendment interests" can only be described as excessive and over-reaching. *See Plumhoff*, 572 U.S. at 774. Not only did Defendant lack sufficient cause to conduct a traffic stop in the first place; even if a traffic stop would have been justified – and nothing on the record suggests that it was – nothing before the Court would have justified the excessive force deployed by Defendant when he effected the stop by striking Plaintiff three consecutive times with his police cruiser. Indeed, there is no evidence that Plaintiff "posed an immediate threat of serious physical harm to the officer or to others . . . [that] deadly force [was] necessary to prevent escape . . . [or that] the officer [gave Plaintiff] some

warning" before striking him with the police cruiser. *Scott v. Harris*, 550 U.S. 372, 382 (2007) (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)).[2] The Court therefore finds that Defendant's conduct was grossly unreasonable.

While the affirmative defense of qualified immunity may have been available to Defendant based on the facts of this case, Defendant has failed to raise this defense and has thus forfeited it. *See, e.g., Lawless v. Town of Freetown*, 63 F.4th 61, 65 (1st Cir. 2023) (internal citations omitted) ("As an affirmative defense, qualified immunity can be waived or, more precisely here, forfeited."). Therefore, the Court finds that Defendant employed excessive force in violation of Plaintiff's Fourth Amendment constitutional rights. As such, Plaintiff is entitled to damages under Section 1983.

### b. Compensatory Damages

Compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." *Healy v. Martínez*, 18-cv-1754, 2022 WL 18861859, at *13 (D.P.R. May 26, 2022) (quoting *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001)) (quotations omitted). Plaintiff seeks to recover for the physical, emotional, and consequential injuries he suffered as a result of the collision. (**ECF No. 1 at 3 ¶ 3.11**).

At the hearing, Plaintiff presented evidence that he lost wages as a result of the physical injuries he sustained in this case. At the time of the incident, Plaintiff was a waiter at the San Juan Hotel. (**ECF No. 16 at 5:22–6:7**). Plaintiff admitted into evidence Exhibit 3, which demonstrated that his income for 2023 was $69,609.46. (**ECF No. 16**

---

[2] To be clear, *Soctt* disclaims the notion that these factors may establish whether an officer's acts are "*per se* unreasonable": as the Supreme Court explained in *Scott*, there is no "magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.'" *Scott*, 550 U.S. at 382. Instead, these factors simply represent one possible "application of the Fourth Amendment's 'reasonableness' test." *Id*. It is in that latter sense that the Court invokes these factors here.

at 24:21–25:16). Then, he admitted into evidence Exhibit 4, which demonstrated that his income for 2024 was $55,968.54. (**ECF No. 16 at 25:24–26:10**). Plaintiff then testified that this difference of $13,640.92 in his income between 2024 and 2023 was because he could not work for several months during 2024. (**ECF No. 16 at 26:11–16**).

Plaintiff failed to present any further evidence which would entitle him to additional compensatory damages in this case. Therefore, based on the materials provided by Plaintiff, the Court finds that he is entitled to an award in the amount of $13,640.92 in compensatory damages.

### c. Punitive Damages

Plaintiff also seeks punitive damages in the amount of $500,000. (**ECF No. 1 at 3 ¶ 3.12**). Punitive damages serve a different purpose than compensatory damages, as they are aimed at deterrence and retribution. *Healy,* 2022 WL 18861859, at *13 (D.P.R. 2022). Punitive damages may be available under Section 1983 if a defendant's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Méndez-Matos v. Mun. of Guaynabo*, 557 F.3d 36, 47–48 (1st Cir. 2009) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). This standard "requires proof that the defendant acted in the face of a perceived risk that his actions would violate federal law." *Iacobucci v. Boulter*, 193 F.3d 14, 26 (1st Cir. 1999) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535–36 (1999)). This proof may be circumstantial. *Méndez-Matos*, 557 F.3d at 49 (citing *Iacobucci*, 193 F.3d at 27).

In the instant case, Defendant hit Plaintiff with his squad car three consecutive times, knocking Plaintiff off his motorcycle and causing him to fall and suffer a serious accident. Nothing on the record gave Defendant lawful authority to conduct a traffic stop, much less the authority to conduct the seizure by means of potentially lethal physical

force. *See Iacobucci*, 193 F.3d at 26 ("To make out a jury question on punitive damages . . . [the plaintiff] needed to adduce evidence sufficient to show that [the officer decided] to effectuate the arrest knowing that he lacked probable cause to do so, or, at least, with conscious indifference to the possibility that he lacked probable cause."). The injuries sustained by Plaintiff corroborate the highly dangerous and indefensible means by which Defendant conducted the unlawful stop. (**ECF No. 1 at 2–3 ¶ 3.8**). Several other facts on the record indicate that Defendant was conscious of the fact that his actions violated the constitutional rights of Plaintiff: while attempting to strike Plaintiff's motorcycle, Defendant cursed, taunted, and threatened Plaintiff, (**ECF No. 16 at 27:8–28:1**); and after Plaintiff had been stopped, Defendant attempted to pressure Plaintiff to speak into Defendant's body-worn camera and declare that the accident had been Plaintiff's fault, (**ECF No. 16 at 11:21–12:4**). Taken together, these uncontested facts suggest that Defendant' conduct was "motivated by evil motive or intent," and that Defendant was aware that his conduct risked violating Plaintiff's Fourth Amendment rights. Thus, punitive damages are permissible in this case.

Next, even having met the above threshold requirement, availability of punitive damages is limited by the Due Process Clause of the Fourteenth Amendment, to prevent "grossly excessive" awards. *Méndez-Matos*, 557 F.3d at 47 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416–17 (2003)). The United States Supreme Court has provided three guideposts for examining whether the punitive damages awarded by a jury are "grossly excessive": "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive

damages awarded . . . and the civil penalties authorized or imposed in comparable cases." *Méndez-Matos*, 557 F.3d at 52 (citing *BMW of N. Am., Inc*, 517 U.S. at 574–75).

The most important factor for examining the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct. *State Farm*, 538 U.S. at 419. Reprehensibility in turn, is determined by considering whether: "[1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id.*

As previously described, Plaintiff suffered serious physical injuries as a direct result of Defendant's unlawful conduct. *See (***ECF No. 1 at 2–3 ¶¶ 3.8, 3.10***)*. Those physical injuries landed Plaintiff in the hospital and forced him to miss work for months. Furthermore, there is no doubt that Defendant's grossly disproportional use of force to conduct the unlawful traffic stop evidenced a "reckless disregard of the health and safety of others[.]" *State Farm*, 538 U.S. at 419. In addition, Defendant's conduct also comprised a set of "repeated actions", as he struck Plaintiff with his police cruiser not once but three consecutive times. *Id.* Taken together, these facts also give rise to the inference that Defendant's conduct was "the result of intentional malice." *Id.*

When considering the relationship between actual or potential harms and punitive damages, the Supreme Court has repeatedly rejected simple mathematical formulas imposing bright-line constitutional limits on punitive damages awards. *See State Farm,* 538 U.S. at 424–25. However, we are not without guidance. In general, punitive damages must be reasonable and proportionate to the amount of harm to the plaintiff and to the

general damages recovered. *State Farm,* 538 U.S. at 426. In the past, the Supreme Court has treated a 4:1 ratio as instructive and close to, yet within, the bounds of constitutional propriety. *Id.* at 425 (citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23–24 (1991); *BMW of N. Am., Inc.*, 517 U.S. at 581). Greater ratios may be upheld where particularly egregious conduct resulted in only a small amount of compensatory damages. *State Farm*, 538 U.S. at 425 (citing *BMW of N. Am., Inc.*, 517 U.S. at 583). The First Circuit has noted that large punitive awards have been affirmed in Section 1983 cases where plaintiff suffered significant physical injury through violence or where the conduct at issue was intentional or malicious. *Méndez-Matos,* 557 F.3d 36, 55–56 (collecting cases). In cases of excessive force, the First Circuit has affirmed punitive damages awards with a ratio of greater than 10:1. *See, e.g., Casillas-Díaz*, 463 F.3d at 86.

Given the reprehensibility of Defendant's conduct, the serious physical harms suffered by Plaintiff, the potential additional harms that Plaintiff could have suffered from being knocked off a motorcycle in the highway, and the limited compensatory damages to be awarded, the Court concludes that a 5:1 ratio between punitive and compensatory damages is warranted. The Court therefore grants punitive damages to Plaintiff in the amount of $68,200.00.

## V. Conclusion

For the reasons stated throughout this Opinion and Order, the Court hereby **GRANTS** default judgment to Plaintiff in the amount of $81,840.92.

It is hereby **ORDERED**.

In San Juan, Puerto Rico, this 19th day of December, 2025.

*s/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**